UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE SMITH,<br><br>                         Plaintiff,<br><br>v.<br><br>AT&T INC.; PACIFIC BELL,<br><br>                        Defendants. | Case No.: 3:17-cv-723-CAB-(WVG)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br>**[Doc. No. 63.]** |

This matter comes before the Court on Defendant Pacific Bell Telephone Company dba AT&T California's (erroneously sued as "Pacific Bell") ("AT&T") Motion for Summary Judgment. [Doc. No. 16.] The Court finds the motion suitable for determination on the papers submitted and without oral argument in accordance with Civil Local Rule 7.1(d)(1). For the reasons explained below, the Court GRANTS the motion.

**I.    BACKGROUND**

On April 10, 2017, Plaintiff instituted this lawsuit. [Doc. No. 1.] Following a request from Defendant that was granted by the Court, Plaintiff filed a More Definite Statement [Doc. Nos. 25, 26] that became the controlling complaint ("SAC") [Doc. No. 25]. Plaintiff alleges multiple violations of Title VII of the Civil Rights Act of 1964, including discrimination, "Reprisal for Engaging in Protected in Activity," hostile and abusive work environment, and unlawful employment practice. [Doc. No 25 at ¶¶ 89-96.]

1

The essence of the dispute concerns whether Plaintiff was fired and/or suspended from his position at AT&T on the basis of his race, sex or in retaliation for his filing complaints with the National Labor Relations Board (NLRB) and California's Division of Labor Standards Enforcement. AT&T contends that it had legitimate business reasons to suspend and terminate Smith that was unrelated to any protected criteria. Further, Defendant asserts that there is no evidence that its employment decision was motivated by anything other than its good faith belief that Plaintiff has violated company policy.

On September 27, 2018, Defendant filed a motion for summary judgment with a noticed hearing date of November 6, 2018. [Doc. No. 63.] The proof of service attached to the motion [Doc. No. 63-53] indicates that a copy of the motion and all of its exhibits was served on Plaintiff via overnight delivery-next day deliver to his address of record. [*Id.* at 3.[1]] On October 24, 2018, Defendant filed a Notice of Non-Opposition to Its Motion for Summary Judgment.[2] [Doc. No. 64.] As of the date of this order, Plaintiff has not filed a response to the motion.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c)(1)(A) provides that "a party may move for summary judgment at any time until 30 days after the close of discovery." "A party opposing the motion must file a response within 21 days after the motion is served or a responsive pleading is due, whichever is later." Fed. R. Civ. P. 56(c)(1)(B).

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any , show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Entry of summary judgment is proper "against a party who fails to make a showing

---

[1] Document numbers and page references are to those assigned by CM/ECF for the docket entry.
[2] Local Rule 7.1 (f)(3) provides that "if an opposing party fails to file the papers required by Civ. Local Rule 7.1.e.2 that failure may constitute a consent to the granting of the motion."

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

Pursuant to Federal Rule of Civil Procedure 56(e)(2), when a party fails to respond to a summary judgment motion, the court may grant the moving party's motion "if appropriate." Fed. R. Civ. P. 56(e). The Court of Appeals for the Ninth Circuit has held that "even if a motion for summary adjudication is unopposed, a court cannot grant summary judgment solely because no opposition has been filed. *Cristobal v. Siegel*, 26 F.3d 1488, 1494–95 & n. 4 (9th Cir.1994). The court may, however, grant an unopposed motion for summary judgment if the movant's papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact. *See Carmen v. S.F. Unified Sch. Dist.,* 237 F.3 1026, 1029 (9th Cir. 2001); *U.S. v. Real Prop. at Incline Vill.*, 47 F.3d 1511, 1519-20 (9th Cir. 1995) (holding local rule cannot mandate automatic entry of judgment for moving party without consideration of whether motion and supporting papers satisfy Fed. R. Civ. P. 56), *rev'd on other grounds sub nom. Degen v. U.S.*, 517 U.S. 820 (1996).

### III. DISCUSSION

AT&T moves for summary judgment on all four of the Title VII claims. Plaintiff has not filed an opposition to AT&T's motion and therefore has not challenged any of the facts asserted by Defendant as required by Federal Rule of Civil Procedure 56(c). Accordingly, the Court may consider facts presented by AT&T as undisputed for purposes of its motion, and grant summary judgment if the undisputed facts, and the motion and supporting papers, show that AT&T is entitled to judgment in its favor.

**A. Discrimination Claims**

Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-(2)(a)(1).

To prevail in his discrimination claims Smith must first establish a *prima facie* case of discrimination. *Washington v. Garrett,* 10 F.3d 1421, 1432 (9th Cir. 1993). The burden of production then shifts to AT&T to articulate a legitimate nondiscriminatory reason for the adverse employment decision. *Id.* If AT&T carries its burden, Smith is afforded an opportunity to demonstrate that the "assigned reason was a pretext or discriminatory in its application." *Id.* (internal quotation marks and citation omitted).

To assert a *prima facie* case of discrimination under Title VII, Smith must demonstrate: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) that is causally related to his protected class; (4) some other circumstances creating a reasonable inference of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

*1. Race Discrimination Claim*

AT&T asserts that Plaintiff cannot establish a claim for race discrimination, because he never advised any of his managers of his "Amaru Ouachita" or "white" claimed race. [Doc. No. 63-1 at 19.] Additionally, AT&T contends that any claim that it discriminated against Plaintiff because it erroneously perceived him to be African-American also fails because the protections of Title VII do not extend to persons who are merely perceived to belong to a protected class. [*Id.*] Finally, Defendant argues that even assuming Plaintiff has asserted a *prima facie* case for race discrimination, AT&T had legitimate business reasons for each of Smith's suspensions and his termination. [*Id.* at 21-24.]

Defendant's evidence shows that the events upon which Plaintiff's claim are based demonstrate that Smith was not terminated because of his race. Although Plaintiff described himself as being an African-American male in the SAC, *see* Doc 25 ¶ 9, he

testified at his deposition that the race he identifies as is "Amaru Ouachita [sic]." [Doc. No. 63:10 at 18.] During his deposition Smith also stated that he does not identify as Native American, that his "political status is white," and that he never advised any of his managers of his racial designation of Amaru Ouachita. [Doc. No.63-10 at 4, 69-68.] Therefore, Plaintiff's managers could not have been motivated by his claimed race of Amaru Ouachita when they were unaware of it. *See Raytheon Co. v. Hernandez,* 540 U.S. 44, 55 n.7 (2003) ("If [defendant] were truly unaware that [plaintiff's] disability existed, it would be impossible for her hiring decision to have been made, even in part, on [plaintiff's] disability. And if no part of the hiring decision turned on [plaintiff's status as disabled, he cannot, *ipso facto,* have been subject to disparate treatment.").

Alternatively, any claim that AT&T discriminated against Smith because it erroneously perceived him to be African-American fails as "the protections of Title VII do not extend to persons who are merely 'perceived' to belong to be a protected class." *Lewis v. N. Gen. Hosp.*, 502 F. Supp. 2d 390, 401 (S.D.N.Y. 2007); *see also Guthrey v. Cal. Dep't of Corr. & Rehab.*¸ No. 1:10-CV-02177-AWI, 2012 WL 2499938, at *6 n.2 (E.D. Cal. June 27, 2012) (court finding Plaintiff's Title VII claim based on "perception of race" theory not a cognizable theory under Title VII.). Additionally, there is no evidence to support a rational inference of race discrimination as AT&T has suspended and terminated employees of all different races for similar behavior exhibited by Smith. [Doc. Nos. 63-3 at ¶¶ 36, 37; 63-7 at ¶ 34; 63-11 at 8-10; 63:12 at 6-8; 63-40 – 63-42.]

In the absence of evidence to the contrary, the Court finds that Plaintiff has not meet his *prima facie* burden and established that race played any factor in the decisions to suspend and terminate him.

Furthermore, had Plaintiff asserted a *prima facie* of Title VII race discrimination, the declarations of multiple AT&T employees and numerous exhibits attached to the motion illustrate Smith was terminated because of his repeated violations of AT&T's Code of Business Conduct ("COBC") and his falsification of company records. [Doc. Nos. 63-3 - 63-8, 63-11 - 63-13, 63-15 - 63-18, 63-19, 63-22 - 63-26, 63-28 - 63-32, 63-34, 63-40.]

The evidence shows that Smith's suspensions in November 2015 and April 2016 were related to poor customer relations and unprofessional behavior towards supervisors. [Doc. Nos. 63-3 ¶¶ 10-15; 63-8 ¶¶ 9-15; 63-10 at 30-34, 38-42; 63-11 at 14-26; 63-15; 63-18.] Similarly, the evidence demonstrates that the August 2016, September 2016 and January 2017 suspensions were a result of Smith's disruptive behavior and insubordination towards supervisors in violation of AT&T's company policy. [Doc. Nos. 63-3 at ¶¶ 26-31; 63-6 at ¶¶ 8-18; 63-8 at ¶¶ 18-25; 63-22; 63-23; 63-25; 63-26; 63-28.] Finally, the evidence establishes that after performing an investigation into its belief that Plaintiff had misused kin care benefits and falsified company records, AT&T concluded that Smith had not in fact left work to take care of his niece but had left work to run personal errands and terminated his employment. [Doc. Nos. 63-5 at ¶¶ 6, 7, 10; 63-7 at ¶¶ 11-32; 63-32.] Subsequently, at his own deposition Smith conceded that he does not have a niece and never had to leave work to care for his niece [Doc. No. 63-10 at 80-82.], thereby proving that AT&T's supposition was correct. There is no evidence before the Court to refute AT&T's basis for its actions, or to establish its rationale was pretextual or unworthy of belief. Thus, to the extent that Plaintiff is making Title VII claim based on race discrimination, AT&T has successfully established that that it had legitimate, non-discriminatory reasons to terminate Smith. *See Texas Dep't of Cmty. Affairs. v. Burdine*, 450 U.S. 248, 254-55 (1981). Accordingly, Defendant's motion for summary judgment on the race discrimination claim is granted.

*2. Gender Discrimination Claim*

AT&T seeks summary judgment on the gender discrimination claim on the grounds that Smith has failed to meet his *prima facie* burden and establish that gender played any factor in the decisions to suspend and terminate him. [Doc. No. 63-1 at 25-26.] Defendant again argues that even if Plaintiff meets his initial burden and establishes a *prima facie* case for gender discrimination, AT&T had legitimate business reasons for each of Smith's suspensions and his termination. [Doc. No. 63-1 at 26-27.]

In support of his gender discrimination allegation Smith points to three encounters he had with sales coach managers Misti Clark, Geraldine Clark and Annalisa Saldana. Specifically, he alleges: (1) Ms. Clark told him that his tone when he spoke to customers was "too flamboyant," [Doc. Nos. 25 at ¶ 15, 63-10 at 26]; (2) Ms. Spear told him he was talking "like a white lady" and "acting like a bitch," [Doc. No 63-10 at 25]; and (3) Ms. Saldana once told him he needed to stop being a little girl, [Doc. No. 63-10 at 25].

In its motion for summary judgment AT&T has provided evidence that two of the managers in question have denied discriminating against Smith based on his sex, with Ms. Spears submitting a declaration that included details surrounding coaching Smith regarding an appropriate tone of voice to use with customers on service calls. [Doc. No 63-6 at ¶ 27; 63-8 at ¶¶ 16, 27, 29, 30.] In addition, when questioned at their depositions about the behavior of the managers about whom Smith had complained, union representative Mellor responded that these individuals had always treated everyone fairly and professionally [Doc. No. 63-11 at 4-6], and union representative Munoz stated that none of Smith's supervisors ever displayed any bias or dislike towards Smith [Doc. No. 63:12 at 35-37].

Even assuming Smith's allegations regarding the comments made by his supervisors are true, these comments are best classified as "stray remarks" because there is no evidence they were related to any employment action taken against Smith, nor do they demonstrate any discriminatory intent by the decision-makers. Such general comments that are unrelated to Smith's suspension or termination are not sufficient to establish a triable issue of fact as to discriminatory intent. *See Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1438 (9th Cir. 1990) (holding that some remarks are not sufficient to show discriminatory intent for the purpose of discrimination claim based on failure to promote). Additionally, there is no evidence to suggest that Smith's gender played any factor in the decision to suspend and ultimately terminate his employment. In fact, AT&T has suspended and terminated male and female employees for the same misconduct Smith engaged in. [Doc. Nos. 63-3 at ¶¶ 36, 37; 63-7 at ¶ 34; 63-11 at 8-10; 63:12 at 6-8; 63-40 – 63-42.]

In the absence of evidence to the contrary, the Court finds that Plaintiff has not met his *prima facie* burden and established that gender played any factor in the decisions to suspend and terminate him. Moreover, as explained in more detail above, AT&T had legitimate business reasons for each of Smith's suspensions and ultimate termination and there is no evidence to refute AT&T's basis for these actions, or to establish its rationale was pretextual or unworthy of belief. *See Texas Dep't of Cmty. Affairs.* 450 U.S. at 254-55. Accordingly, Defendant's motion for summary judgment on the gender discrimination claims is granted.

**B. Retaliation Claim**

AT&T move for summary judgment on the retaliation claim asserting that Smith's claim fails as a matter of law because it is preempted by the National Labor Relations Act ("NLRA"). [Doc. No. 63-1 at 27.]

"The jurisdiction of National Labor Relations Board is exclusive and preemptive as to activities that are 'arguably subject to regulation under § 7 or § 8 of the [National Labor Relations] Act." *Int'l Longshoremen's Local 1416, AFl-CIO v. Ariadne Shipping Co.*, 397 U.S. 195, 200 (1970). Because Smith is claiming AT&T fired him for filing grievances with his union, the proper forum for filing this claim was with the NLRB. *See Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057, 1061 (9th Cir. 1989) ("Aside from section 301 claims, any federal or state claim for wrongful discharge based on union activity is preempted by NLRA §§ 7 and 8.").

In fact, Smith filed a claim with the NLRB on May 24, 2017, claiming AT&T "through its agents, officers, and representatives, bullied and imposed more onerous working condition on Andre M. Smith in retaliation for his union activity of filing grievances." [Doc. No. 63-47] The NLRB investigated Smith's claim and dismissed it, concluding that there was insufficient evidence to establish that AT&T harbored animus towards Smith or retaliated against him for filing grievances or for his union activities. [Doc. No. 63-48.] In so finding, the Board determined the suspension on January 23, 2017 was a result of his conduct on that day, and the interviews on April 25 and May 3, 2017

were in connection with the leave from work he took on April 10, 1017. [*Id.*] The letter also explains the NLRB's appellate procedure. [*Id.*]

The proper forum for Plaintiff to pursue his retaliation claim is with the NLRB's Office of Appeals. [*Id.* at 3.] Accordingly, Defendant's motion for summary judgment on the retaliation claim is granted.

**C. Hostile Work Environment Claim**

AT&T seeks summary judgment on this claim asserting that Smith has failed to prove that he was subject to any harassment and that the comments allegedly made to him were insufficient to rise to the level of actionable harassment. [Doc. No. 63-1 at 27-29.]

To prevail on a hostile workplace claim premised on either race or sex Smith must show: "(1) that he was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 642 (9th Cir. 2003) *as amended* (Jan 2, 2004). The Supreme Court has cautioned that Title VII is not to become a "general civility code," therefore, courts must look at all of the circumstances "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (citation omitted).

The conduct at issue here involves three interactions Smith had with sales coach managers where he alleges he was told he was "too flamboyant," that he was talking "like a white lady" and "acting like a bitch," and that he needed to stop being a little girl. [Doc. No. 63-10 at 25-26.] Even if the alleged conduct occurred, nothing in the record suggest it is was of the magnitude necessary for it to be considered frequent, severe or abusive enough to interfere unreasonably with Smith's employment. In the absence of evidence to the contrary, the Court finds that AT&T did not create a hostile work environment for

Smith. Accordingly, Defendant's motion for summary judgment on the hostile work environment claim is granted.

### D. Unlawful Employment Practice Claim

AT&T asserts that Smith's fourth cause of action for "unlawful employment practice 42 U.S.C. 2000e-2" is merely a restatement of his other claims and therefore fails for the same reasons. [Doc. No. 63-1 at 29-30.] The Court agrees. Accordingly, Defendant's motion for summary judgment on the unlawful employment practice claim is granted.

### IV. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment [Doc. No. 63] is **GRANTED**.

The Clerk of the Court is instructed to enter judgment in favor of Defendant and **CLOSE** the case.

It is **SO ORDERED**.

Dated: November 9, 2018

_____
Hon. Cathy Ann Bencivengo
United States District Judge